VENABLE LLP
Daniel S. Silverman (SBN 137864)
dssilverman@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:   (310) 229-9900
Facsimile:   (310) 229-9901

Damon W.D. Wright
(*pro hac vice* application to be filed)
dwdwright@venable.com
Christopher S. Crook
(*pro hac vice* application to be filed)
cscrook@venable.com
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

*Attorneys for The Control Group*
*Media Company, LLC; Instant*
*Checkmate, LLC; and TruthFinder, LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tyanna Walker, Samantha Sanchez, Terry Hunt, Joe Cardenas, Vladimir Tejada, Roberto Huerto, and Michelle Rice on behalf of themselves and of others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>The Control Group Media Company, Inc.; Instant Checkmate, LLC; and TruthFinders, LLC,<br><br><br>Defendants. | CASE NO. 19-cv-347 LAB JLB<br><br>Hon. Larry Alan Burns<br>Courtroom 14A<br><br>**THE CONTROL GROUP, INSTANT CHECKMATE, AND TRUTHFINDER'S NOTICE OF MOTION AND CONSOLIDATED MOTION TO DISMISS THE COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:         June 24, 2019<br>Time:         11:15 a.m.<br>Place:        Courtroom 14A<br><br>Action Filed:      February 20, 2019<br>Am. Complaint:   April 2, 2019<br>Trial Date:        TBD |

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT, on June 24, 2019 at 11:15 a.m., before the Honorable Larry Alan Burns, United States District Judge, in Courtroom A, 14th floor of the U.S. District Court for the Southern District of California, located at 333 West Broadway**,** San Diego, CA 92101, Defendants, by counsel, will move this Court to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Damon W.D. Wright and attached Appendices, the complete files and records in this action, and such further evidence and argument the Court might allow.

Dated:  April 30, 2019

VENABLE LLP

By:   */s/ Daniel S. Silverman*

*Attorneys for Defendants*
*The Control Group Media*
*Company, LLC; Instant Checkmate,*
*LLC; and TruthFinder, LLC*

i

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

STANDARD............................................................................................................7

ARGUMENT...........................................................................................................8

    A.    Plaintiff's FCRA Claim Must Be Dismissed For Failure to Plead Plausible Facts that Defendants Are Consumer Reporting Agencies.........................................................................................8

        1.    The FCRA cannot apply if a communication is not intended to be a consumer report...................................9

        2.    Defendants do not intend for their products to be used as consumer reports...................................13

        3.    The FTC agrees that Defendants do not furnish consumer reports..............................................19

    B.    Plaintiffs' Texas Claims Must Be Dismissed Because the Texas Statute Does Not Apply to Defendants...........................20

        1.    The Texas Statute does not apply to information service or interactive computer service websites like Instant Checkmate and TruthFinder. .................................20

        2.    The Texas Statute does not apply to businesses like Instant Checkmate and TruthFinder that do not charge to remove information. .........................21

    C.    All Claims Against The Control Group Must Be Independently Dismissed .................................24

    D.    The Complaint Should Be Dismissed With Prejudice.....................25

CONCLUSION................................................................................................25

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 7, 8

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1990) .............................................................................. 7

*Bergen v. Martindale-Hubbell, Inc.*,
    176 Ga. App. 745 (1985) .................................................................................. 10

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) .............................................................................. 8

*Comeaux v. Brown & Williamson Tobacco Co.*,
    915 F.2d 1264 (9th Cir. 1990) ...................................................................... 11, 13

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ............................................................................ 7

*DIRECTV, Inc. v. Hoa Huynh*,
    503 F.3d 847 (9th Cir. 2007) .............................................................................. 8

*Dotzler v. Perot*,
    914 F. Supp. 328 (E.D. Mo. 1996), *aff'd*,
    124 F.3d 207 (8th Cir. 1997) ............................................................................ 10

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .......................................................................... 21

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................................. 3

*Ippolito v. WNS, Inc.*,
    864 F.2d 440 (7th Cir. 1988) ............................................................................ 11

*Kidd v. Thomson Reuters Corp.*,
    299 F. Supp. 3d 400 (S.D.N.Y. 2017) ................................................... 11, 12, 19

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

Motion to Dismiss the Complaint
Case No. 19-cv-347 LAB JLB

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Missouri ex rel. Koster v. Harris,*

    847 F.3d 646 (9th Cir.), *cert. denied sub nom. Missouri ex rel.*

    *Hawley v. Becerra*, 137 S. Ct. 2188 (2017) ......................................................25

*Kwan v. SanMedica Int'l,*

    854 F.3d 1088 (9th Cir. 2017).....................................................................8

*Liberi v. Taitz,*

    No. SACV 11-0485 AG AJWX, 2012 WL 10919114

    (C.D. Cal. Mar. 16, 2012) ...........................................................................10

*Liberi v. Taitz,*

    No. SACV 11-0485 AG AJWX, 2012 WL 10919115

    (C.D. Cal. May 22, 2012) ...............................................................11, 12, 19

*McCready v. eBay, Inc.,*

    453 F.3d 882 (7th Cir. 2006).....................................................................10

*Mende v. Dun & Bradstreet, Inc.,*

    670 F.2d 129 (9th Cir. 1982)...............................................................10, 11

*Moss v. U.S. Secret Service,*

    572 F.3d 962 (9th Cir. 2009).......................................................................8

*Papasan v. Allain,*

    478 U.S. 265 (1986) ......................................................................................7

*Peller v. Retail Credit Co.,*

    359 F. Supp. 1235 (N.D. Ga. 1973), *aff'd*, 505 F.2d 733

    (5th Cir. 1974) .............................................................................................10

*St. Paul Guardian Ins. Co. v. Johnson,*

    884 F.2d 881 (5th Cir. 1989).....................................................................10

*Swartz v. KPMG LLP,*

    476 F.3d 756 (9th Cir. 2007).......................................................................3

*Sweet v. LinkedIn Corp.*,

    No. 5:14-CV-04531-PSG, 2015 WL 1744254

    (N.D. Cal. Apr. 14, 2015) ...................................................................... 12, 13, 19

*Wright v. Zabarkes*,

    347 F. App'x 670 (2d Cir. 2009) ........................................................................ 10

*Zango, Inc. v. Kaspersky Lab, Inc.*,

    568 F.3d 1169 (9th Cir. 2009) .......................................................................... 21


## Statutes

Communications Act, 47 U.S.C. § 153 ................................................................... 20

Communications Decency Act, 47 U.S.C. § 230(f) ................................................ 20

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ........................................ *passim*

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ............................................................. 1

Texas Business & Commercial Code §§ 109.001–109.007 ............................ *passim*


## Other Authorities

Fair Credit Reporting Act: Statements of General Policy or

    Interpretation, 53 Fed. Reg. 29,696 (Aug. 8, 1988) ........................................... 13

Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804

    (May 4, 1990) ....................................................................................................... 13

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 3, 7

Federal Rule of Civil Procedure 15 ....................................................................... 25

Fed. Trade Comm'n, 40 YEARS OF EXPERIENCE WITH THE

    FAIR CREDIT REPORTING ACT, 2011 WL 3020575 .................................. 13

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

Plaintiffs, individually and on behalf of others, have sued The Control Group Media Company, LLC, Instant Checkmate, LLC, and TruthFinder, LLC[1] ("Defendants") for alleged violations of 15 U.S.C. § 1681, known as the Fair Credit Reporting Act ("FCRA"), and Texas Business & Commercial Code §§ 109.001–109.007 ("the Texas Statute").  Defendants now move to dismiss Plaintiffs' claims as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6).  In an alternative motion, also filed this day, Defendants move to compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  Should the motion to compel arbitration be granted, Defendants request that the instant motion be denied without prejudice so that it may be decided in arbitration.

Plaintiffs allege that they each had a criminal record that was sealed or expunged by a Texas court and that, despite request, Defendants then failed to remove their criminal record information from Defendants' websites in violation of FCRA and the Texas Statute.  *See* Am. Compl. ¶¶ 59–63.  Specifically, Plaintiffs allege that they hired an expungement service to represent them and obtain removal of their criminal record information from Defendants' websites; that the expungement service then wrote to Defendants on Plaintiffs' behalf and requested removal of Plaintiffs' criminal record information; that the expungement service then subscribed to Defendants' websites and agreed to the websites' Terms of Use to determine if Plaintiffs' criminal record information had been removed; and that the expungement service then determined and reported to Plaintiffs that their criminal record information had not been removed.  *Id.*  In all events, Plaintiffs

---

[1] The Amended Complaint incorrectly identifies The Control Group Media Company, LLC as "The Control Group Media Company, Inc." and also has misnamed TruthFinder, LLC as "TruthFinders, LLC."

1

make clear that the expungement service interacted with Defendants on their behalf and acquired all of the evidence that founds Plaintiffs' claims. *Id*. ¶ 63.

Plaintiffs have failed to state a FCRA claim against Defendants. Plaintiffs offer the legal conclusion that Defendants are each a "consumer reporting agency" and thus subject to FCRA. However, the actual facts from the Amended Complaint and Defendants' websites amply confirm that the Defendants are not. The test is whether a business has "a reasonable expectation" that the information it provides will be used as a "consumer report," *i.e.*, a report used for FCRA purposes such as employment screening, landlord-tenant screening, or determining eligibility for credit. Applying this test, the Ninth Circuit and its district courts have consistently found that where a web-based business prominently explains that its information cannot be used for FCRA purposes and contractually prohibits anyone from using its information for FCRA purposes, the information is not "expected to be used" for FCRA purposes and thus is not a "consumer report" subject to FCRA. Faced with their own allegations and the very same evidence apparent here, Plaintiffs cannot allege plausible facts to support that Defendants are subject to FCRA.

Plaintiffs have also failed to state a claim under the Texas Statute for two reasons. First, the Texas Statute expressly exempts "information service" providers or "interactive computer services" from its ambit. Here, Plaintiffs' Amended Complaint confirms that Defendants are both. Second, the Texas Statute only applies to companies that charge a fee or other consideration to remove or modify a person's criminal record information. Here, Plaintiffs' Amended Complaint confirms that Defendants do not charge but instead remove a person's criminal record information for free. Plaintiffs cannot state a claim under the Texas Statute because by its plain language it does not apply.

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## BACKGROUND

Defendants Instant Checkmate, LLC and TruthFinder, LLC operate the popular and successful people search and public record information websites InstantCheckmate.com and TruthFinder.com.[2]  *See* Am. Compl. ¶¶ 20–21, 26–27. Instant Checkmate and TruthFinder are sister companies that offer similar public record information through their respective websites.  *See* Am. Compl. ¶ 26.  Instant Checkmate and TruthFinder allow individual consumers to search public record information to learn more about friends, acquaintances, or others.  *See* Am. Compl. ¶ 27.

The Amended Complaint does not contain plausible factual allegations to support that Defendants are each a "consumer reporting agency" and thus subject to FCRA.  Rather, the Amended Complaint addresses the contents of Defendants' websites and describes that Instant Checkmate and TruthFinder "place notices and disclaimers on their websites and apps" explaining to users that the services are not intended to be consumer reports used for any FRCA-regulated purpose.  Am. Compl. ¶ 30.  Plaintiffs explain that "Instant Checkmate has been posting this disclaimer nonstop since its founding in 2010" and that Defendants "claim that the [FCRA] does not apply to them."  Am. Compl. ¶¶ 30, 35.  As explained and shown below, Defendants require that persons repeatedly take affirmative action to agree to not use Defendants' websites for any FCRA purpose and, in fact, more broadly require that persons contractually agree not to use Defendants' websites for any business purpose.[3]  *See* Appendix A at 6–10, Appendix B at 9–13.

---

[2] Plaintiffs have also named "The Control Group Media Company, Inc.," which again is actually The Control Group Media Company, LLC ("The Control Group"), as a Defendant.  Am. Compl. ¶ 19.  The Control Group is a related company that does not own InstantCheckmate.com or TruthFinder.com but instead provides technical and operational support.  For the reasons discussed in § E, *infra*, all claims against The Control Group must be independently dismissed from this matter.

[3] Because the Amended Complaint is focused on the contents of Defendants' websites, the Court may consider the entirety of the website within the limitations of Rule 12(b)(6).  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007);

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1  The Defendants' websites vividly explain:



*Screenshot from InstantCheckmate.com*

*Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (considering screenshots from the defendants' website on a motion to dismiss).

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

**You Can Use TruthFinder To Look Up...**

**Neighbors**

Whether you moved into a new neighborhood or a new neighbor just moved into yours, you can use TruthFinder to learn more about who lives next door!

**New Relationships**

Before you meet up with a total stranger, you should look at their background report. Do they have a criminal record? Could they still be involved with someone else? TruthFinder can help you verify that someone is safe and trustworthy.

**Sex Offender Database**

Scan your neighborhood for registered sex offenders, and take a closer look at their background report. Find out if any registered sex offenders live near you or someone you know.

**Family Members**

TruthFinder has helped reunite relatives across the United States. Track down long-lost family members, or open background reports on your parents to expand your family tree.

Whatever your reason for looking up your relatives, TruthFinder can help you learn more about them.

**Parents of Your Kid's Friends**

When your child shares a carpool or spends time at their friend's house, you want to make sure they're in good hands. Run a background check on the parents involved in your child's life.

**New Friends**

When you meet someone new, you can't always rely on your gut instinct. Before you open up to your new friend, use TruthFinder to figure out if they're worth your trust.

**Old Friends**

Want to reconnect with friends from years past? TruthFinder can help you track down your old buddies so you can make up for lost time.

**Former Classmates**

Looking to pull off the best school reunion ever? Start by updating your address book. When you search former classmates' public records on TruthFinder, you could locate their addresses and contact information.

**Social Media Connections**

When you share your life online, you never know who's keeping tabs. Use TruthFinder to search people who friend or follow you on social media.

**Online Sellers**

We know how convenient it is to buy and trade goods online. We also know how easy it is to get scammed. Before you close a deal with someone, use a background check to make sure they can be trusted.

**Vacation Buddies**

Taking a road trip with new friends, or meeting up with someone you just met on spring break? Make sure whoever you drive, travel, or connect with has a clean driving and criminal record.

*Screenshot from TruthFinder.com*

46337844

Motion to Dismiss the Complaint
Case No. 19-cv-347 LAB JLB

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1

**Unknown Numbers**

2
Wondering who's behind that mystery number? Instead of searching for background reports with someone's name, search by phone number. Finally, an easy way to find out who has been calling you!

3
**Celebrities**

4
Celebs are notorious for causing trouble. Find out if your favorite celeb, or anyone else making headlines, has a criminal record.

5
**Yourself**

6
Your online reputation is more important now than ever. Look up your background report on TruthFinder, and learn what other people might dig up on you!

7
**You Cannot Use TruthFinder To ...**

8
**Screen Employees**

9
Employers cannot use TruthFinder to conduct pre-employment background checks or decide on promotion, demotion, reassignment, retention, or termination of an employee.

10
**Screening Domestic Workers**

11
You cannot use TruthFinder to hire babysitters, nannies, home aides, gardeners, or any other type of domestic worker.

12
**Screen Tenants**

Landlords cannot use TruthFinder to sell, retain, assign, or terminate a lease for a residential or commercial space.

13
**Screen Professional Services**

14
You cannot use TruthFinder to hire teachers, tutors, doctors, nurses, coaches, personal trainers, or individuals offering any other professional service.

15
Determine Qualifications for Educational Programs or Scholarships

16
You cannot use TruthFinder to determine someone's eligibility for a grant, scholarship, educational program, financial aid, or another related purpose.

17
**Verify Eligibility for Credit or Insurance Purposes**

18
You cannot use TruthFinder to verify someone's credit history or decide someone's eligibility for issuing insurance, loans, or a credit extension.

19                           *Screenshot from TruthFinder.com (cont'd)*

20   *See* Appendix A at 4–5; Appendix B at 4–8.  A person may use Instant Checkmate

21   or TruthFinder to check someone's age or criminal history before going on a date

22   or to track down friends' or family member's contact information to plan a

23   reunion.  By contrast, Defendants strictly prohibit any use of Defendants' websites

24   for FCRA purposes, such as employment screening, landlord-tenant screening or

25   determining someone's eligibility for credit.

26          Plaintiffs Tyanna Walker, Samantha Sanchez, Terry Hunt, Joe Cardenas,

27   Vladimir Tejada, Roberto Huerta, and Michelle Rice are each clients of an

28   "expungement service." Am. Compl. ¶¶ 3, 46.  Plaintiffs allegedly paid this service,

which is unnamed in the Amended Complaint, "several hundred dollars in court costs, fees, and related expenses to successfully expunge or seal their records," as well as "an additional $100 to personally notify the universe of background check companies, including Defendants, that they must remove the expunged, expuncted or sealed records from their database." *Id.* ¶¶ 59–60.  The Amended Complaint further explains that, in connection with obtaining the evidence that founds Plaintiffs' claims, the expungement service "subscribed to Defendants' website and reviewed its clients' published reports for a fee."  Am. Compl. ¶ 63.  In so doing, the expungement service affirmatively agreed several times that Instant Checkmate and TruthFinder were not "consumer reporting agencies" and that the information acquired would not be used for any FCRA purpose or any business purpose.  *See* § A(2), *infra*, Appendix A at 6–10; Appendix B at 9–13.

### STANDARD

A complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint will survive a motion to dismiss only where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  Dismissal is required when a complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a Rule 12(b)(6) motion, first, a district court may accept all factual allegations in the complaint as true, but must discount legal conclusions

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

clothed as factual allegations. *Iqbal*, 556 U.S. at 678–79; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation."). Second, the court must determine if these well-pleaded factual allegations state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

Importantly, "allegations that parrot the language of" a statute "are not well-pleaded facts; they are simply . . . legal conclusions." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "Legal conclusions may provide a framework for a complaint, but they must be supported by factual allegations. The court will assume the veracity of well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (internal citations and quotations omitted).

## ARGUMENT

Plaintiffs cannot state a claim against Defendants under the FCRA or the Texas Statute because Defendants do not fall within the regulatory purview of either statute.

### A.    Plaintiff's FCRA Claim Must Be Dismissed For Failure to Plead Plausible Facts that Defendants Are Consumer Reporting Agencies

Plaintiffs spend the majority of their Amended Complaint attempting to hammer the square peg of Defendants' online people search services—as well as those of the "universe of online businesses operating in this field" (Am. Compl. ¶ 25)—into FCRA's round hole. At bottom, Plaintiff offers only the legal

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

8

conclusion that "Defendant is a 'consumer credit reporting agency,' as defined by 15 U.S.C. § 1681a(f), and regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing 'consumer reports,' as defined in 15 U.S.C. § 1681a(d), to third parties." Am. Compl. ¶¶ 19–21. But under FCRA's plain text, Defendants are not and cannot be subject to its regulatory requirements because Defendants are not consumer reporting agencies under the definition of the statute.

1. *The FCRA cannot apply if a communication is not intended to be a consumer report.*

The FCRA regulates consumer reporting agencies ("CRAs"). 15 U.S.C. § 1681(b). The statute provides a definition for that term:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). A "consumer report," in turn, is defined as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). This definition is consequentialist and necessarily so.

Per this definition, a communication only becomes a consumer report if it is "used or expected to be used" to evaluate creditworthiness, employability, or another permissible purpose (together referred to as "FCRA purposes"). Thus, a communication not intended to be used for a FCRA purpose cannot, by definition, be a consumer report. To construe the statutory language otherwise would invite

9

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1 absurd results: absent the expectation test, everything from watercooler gossip

2 ("oral . . . communication . . . bearing on . . . general reputation") to online dating

3 profiles ("written"; "personal characteristics") would become regulated statements,

4 and the traders in them consumer reporting agencies.[4]

5       This is not, and cannot be, the law.  *See Liberi v. Taitz*, No. SACV 11-0485

6 AG AJWX, 2012 WL 10919114, at *7 (C.D. Cal. Mar. 16, 2012) (rejecting

7 plaintiff's broad interpretation of FCRA as it would mean that "*any* entity that

8 provided *any* information potentially affecting a consumer's creditworthiness

9 would automatically be liable under the FCRA" (emphasis in original).)  To be

10 sure, "FCRA was the product of Congressional concern over abuses in the credit

11 reporting industry."  *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883

12 (5th Cir. 1989).  It was not intended to entrap businesses that, although providing

13 information about people, do not serve employees, landlords, or creditors and thus

14 do not prepare consumer reports.  This conclusion has been reinforced by courts

15 interpreting FCRA, who have settled upon a "subjective intent" or "reasonable

16 expectation" test to determine whether a category of publications falls within the

17 statute's scope.  *See infra*.

18       The Ninth Circuit first construed FCRA's "used or is expected to be used"

19 language in *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 132 (9th Cir. 1982),

20 when analyzing the parallel California Consumer Credit Reporting Agencies Act.

21 There, the Ninth Circuit opined, "We do not believe that the mere fact that a report

22 could be used as a consumer report is enough to make it one. More is required."

23 *Id.* at 133.  The Ninth Circuit revisited this subject in 1990, explaining that whether

24

25 ───────────────

26 [4] Other communications that plaintiffs have failed to shoehorn into FCRA's definition of consumer reports include legal directory entries, *Bergen v. Martindale-Hubbell, Inc.*, 176 Ga. App. 745, 746, (1985); postings on an online marketplace feedback forum, *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006); political mailing list entries, *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996), *aff'd*, 124 F.3d 207 (8th Cir. 1997); polygraph results, *Peller v. Retail Credit Co.*, 359 F. Supp. 1235, 1237 (N.D. Ga. 1973), *aff'd*, 505 F.2d 733 (5th Cir. 1974); and rent demand letters, *Wright v. Zabarkes*, 347 F. App'x 670, 671 (2d Cir. 2009).

27

28

10

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

information is a "consumer report" turns on whether a defendant has "a reasonable expectation that the report will be put to a use permissible under the FCRA." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990); *accord Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 (7th Cir. 1988) ("[N]ot all reports containing information on a consumer are 'consumer reports.'").

Subsequent district courts have added to the Ninth Circuit's interpretation of FCRA's "used or expected to be used" test.  One of the strongest explications of the test came in *Liberi v. Taitz*, No. SACV 11-0485 AG AJWX, 2012 WL 10919115, at *6 (C.D. Cal. May 22, 2012).  There, a plaintiff brought suit under FCRA against LexisNexis, which provided a commercial database of individual consumer information to be used exclusively for non-FCRA purposes.  The court comprehensively reviewed the Ninth Circuit's guidance on the subjective intent/reasonable expectation test and found the issue to be dispositive.  Finding that the reports generated from the LexisNexis database were not subject to FCRA, the court explained:

> The LexisNexis Defendants have demonstrated an absence of any genuine issue of material fact regarding whether they distributed Plaintiffs' information to Defendants "for the purpose of furnishing consumer credit reports to third parties." 15 U.S.C. § 1681a(f); *see also Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273–74 (9th Cir.1990) (holding that information provided to a third-party will be construed as a consumer report if the furnisher of the report "*expects* the user to use the report for a purpose permissible under the FCRA") (italics in original) (citations omitted); *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 133 (9th Cir.1982) (criticizing "expansive" definitions of consumer credit reports that do not take into account the provider's purpose, because otherwise any information gathered about an individual could conceivably fall under the FCRA.)  Here, LRD included non-FCRA disclaimers both on its own webpage, and in its agreement with IRB.  LRD also required IRB to display similar disclaimers on its webpage, and required it to get agreements from its end-users confirming that they would not use the IRB reports for FCRA purposes.

*Liberi*, 2012 WL 10919115, at *6.  The *Liberi* court's "subjective intent" approach has been endorsed by other courts.  *See Kidd v. Thomson Reuters Corp.*, 299 F. Supp. 3d 400, 404 (S.D.N.Y. 2017) ("In *Liberi v. Taitz*, for example, the Court

concluded that the defendant, which operated a public records search engine . . . , was not a CRA because, among other things, it had 'established that it did not *intend* the Background Reports it issued to be credit reports'" (internal citation omitted) (emphasis in original).).

In *Kidd v. Thomson Reuters Corp.*, the court addressed whether Thomson Reuters, which (like LexisNexis) provided a commercial database of individual consumer information to be used exclusively for non-FCRA purposes, met the statutory definition of a consumer reporting agency. *Id.* at 402. Conducting the same analysis as *Liberi*, the *Kidd* court reasoned, "By its plain terms, therefore, the statute applies only to a person or entity that regularly assembles consumer information with a particular purpose or subjective intention—namely, of providing it to third parties for use (actual or expected) in connection with an FCRA-regulated end, such as employment eligibility." *Id.* at 404. Because the evidence showed that Thomson Reuters forbade subscribers from using its database for FCRA purposes and did not market it for FCRA purposes, the court found that Thomson Reuters was not a consumer reporting agency. *Id.* at 405–08.

Similarly, in *Sweet v. LinkedIn Corp.*, No. 5:14-CV-04531-PSG, 2015 WL 1744254, at *4 (N.D. Cal. Apr. 14, 2015), plaintiffs failed to state a claim that "reference search results" from a LinkedIn database marketed to employers and assembled by LinkedIn constituted a consumer report. Although plaintiffs argued that the search results "can contribute to hiring decisions made by employers," the court disagreed that these made the search results a consumer report and instead looked to LinkedIn's well-documented expectations about how the search results would be used. *Id.* at *7. Among its findings, the court explained "LinkedIn markets the Reference Search results—and therefore expects them to be used—as a way for potential employers to locate people who can provide reliable feedback about job candidates and does not market the results themselves as a source of reliable feedback about job candidates." *Id.* at *8. Taken together, the court

Motion to Dismiss the Complaint
Case No. 19-cv-347 LAB JLB

concluded that "Plaintiffs' conclusory allegation that LinkedIn 'for monetary fees, engages in the practice of assembling information on consumers, for the purposes of furnishing consumer reports to third parties' does not support a plausible inference that LinkedIn acts as a consumer reporting agency with regard to its assembly of this information." *Id.* at *6.

Finally, the FTC has explained that "[i]f the entity supplying the report has taken reasonable steps to insure that the report is not used for [an FCRA-regulated] purpose, and if it neither knows of, nor can reasonably anticipate such use, the report should not be deemed a consumer report by virtue of uses beyond the entity's control." Fed. Trade Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, 2011 WL 3020575, at *16; *see also* Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804 (May 4, 1990) (noting that a publisher of public records information does not qualify as a CRA "simply because some" of the information "might be used by an occasional subscriber for purposes" within the scope of FCRA); Fair Credit Reporting Act: Statements of General Policy or Interpretation, 53 Fed. Reg. 29,696, 29,697 (Aug. 8, 1988) (noting that "a claims reporting service should not be deemed a consumer reporting agency because of an occurrence beyond its control—a unilateral use decision by the insurer to which it provides a claims report").

Applying this authority, Plaintiffs needed to allege plausible facts to demonstrate that Defendants "*expect*[] the user to use the report for a purpose permissible under the FCRA." *Comeaux*, 915 F.2d at 1274 (emphasis in original). Plaintiffs cannot allege such facts. Rather, as the Amended Complaint acknowledges and Defendants' websites amply confirm, Defendants absolutely do not expect that users will use their reports for FCRA purposes.

2.    *Defendants do not intend for their products to be used as consumer reports.*

As the Amended Complaint acknowledges, Defendants could not be clearer in communicating that persons cannot use Defendants' websites or information for

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

FCRA purposes. *See* Am. Compl. ¶¶ 30, 35. While Defendants' websites have evolved over time, the websites have consistently contained prominent and clear non-FCRA-purpose disclosures. *Cf.* Am. Compl. ¶ 30 ("Instant Checkmate has been posting this disclaimer nonstop since its founding in 2010."). When persons navigate to either the Instant Checkmate or TruthFinder website, they are first greeted by unmistakable, unmissable popup boxes:



*Screenshot from InstantCheckmate.com*



*Screenshot from TruthFinder.com*

*See* Appendix A at 2; Appendix B at 2. The notice explains to persons that the website "does not provide consumer reports and is not a consumer reporting agency." Moreover, before someone can use either Instant Checkmate's or TruthFinder's website, the person must click the "I Understand" button, acknowledging that they have read the contents of the popup notice.

At the footer of every consumer-facing page on each website, Defendants likewise include similar language expressly instructing users that it is prohibited to use the websites for any FCRA purpose.



*Screenshot from InstantCheckmate.com*

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1
2
3

> DISCLAIMER: You may not use our service or the information it provides to make decisions about consumer credit, employment, insurance, tenant screening, or any other purpose that would require FCRA compliance. TruthFinder does not provide consumer reports and is not a consumer reporting agency. (These terms have special meanings under the Fair Credit Reporting Act, 15 USC 1681 et seq., ("FCRA"), which are incorporated herein by reference.) The information available on our website may not be 100% accurate, complete, or up to date, so do not use it as a substitute for your own due diligence, especially if you have concerns about a person's criminal history. TruthFinder does not make any representation or warranty about the accuracy of the information available through our website or about the character or integrity of the person about whom you inquire. For more information, please review TruthFinder Terms of Use.

4

*Screenshot from TruthFinder.com*

5      *See* Appendix A at 3; Appendix B at 3.  Additionally, when someone proceeds

6      through the Instant Checkmate or TruthFinder website, the person is taken through

7      a carefully designed, multi-step "flow" requiring affirmative action and agreement

8      at several points.  Most prominently, at one point before the check-out page, the

9      process is brought to a complete stop and a person is presented with the following

10     box in the center of the screen:

11
12     > ☐ I will not use this service or the information it provides
13     > to make decisions about consumer credit, employment,
       > insurance, tenant screening, or any other purpose that
14     > would require FCRA compliance
15
16     *Screenshot from InstantCheckmate.com*
17
18     > ☐ I will not use this service or the information it
       > provides to make decisions about consumer credit,
19     > employment, insurance, tenant screening, or any
       > other purpose that would require FCRA
20     > compliance.

*Screenshot from TruthFinder.com*

21     *See* Appendix A at 6; Appendix B at 9.  To proceed, the person must affirmatively

22     check the box acknowledging that they "will not use this service or the information

23     it provides to make decisions about consumer credit, employment, insurance,

24     tenant screening, or any other purpose that would require FCRA compliance."

25     Then, on the check-out page, the person must again affirmatively select a check

26     box agreeing that they will not use Defendants' information for FCRA purposes:

27
28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

15

1

> ☐ I understand and agree that Instant Checkmate is not a "consumer reporting agency", as defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not provide "consumer reports", as defined in FCRA. I understand and represent that I am not purchasing and will not use Instant Checkmate's products or services for any purpose in connection with determining a person's eligibility for credit, insurance, employment or for any other eligibility determination subject to FCRA.

*Screenshot from InstantCheckmate.com*

> ☐ I understand and agree that TruthFinder is not a "consumer reporting agency", as defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not provide "consumer reports", as defined in FCRA. I understand and represent that I am not purchasing and will not use TruthFinder's products or services for any purpose in connection with determining a person's eligibility for credit, insurance, employment or for any other eligibility determination subject to FCRA.

*Screenshot from TruthFinder.com*

*See* Appendix A at 8; Appendix B at 11.  These FCRA compliance disclaimers do not stop when a person subscribes to either Instant Checkmate or TruthFinder.  When a person begins a search query, the person is again presented with the same non-FCRA-purpose instruction.



*Screenshot from InstantCheckmate.com*



*Screenshot from TruthFinder.com*

*See* Appendix A at 9; Appendix B at 12.  As is evident from Plaintiffs' Amended Complaint and Defendants' websites, Defendants expressly prohibit using Defendants' websites for any FCRA purpose and expressly require that website users contractually agree not to use Defendants' websites for any FCRA purpose.

This prohibition is further laid out on the binding Terms of Use that persons must affirmatively accept as a condition to subscribe and search Instant Checkmate or TruthFinder.  The Instant Checkmate Terms of Use contain a "Fair Credit

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

Reporting Act (FCRA) Notice":[5]

> Instant Checkmate IS NOT A CREDIT REPORTING AGENCY ("CRA") FOR PURPOSES OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 USC §§ 1681 et seq. AS SUCH, THE ADDITIONAL PROTECTIONS AFFORDED TO CONSUMERS, AND OBLIGATIONS PLACED UPON CREDIT REPORTING AGENCIES, ARE NOT CONTEMPLATED BY, NOR CONTAINED WITHIN, THESE TERMS.
>
> You may not use any information obtained from Instant Checkmate in connection with its Services to determine a prospective candidate's suitability for:
>
> - Health insurance or any other insurance,
> - Credit and/or loans,
> - Employment,
> - Education, scholarships or fellowships,
> - Housing or other accommodations, or
> - Benefits, privileges or services provided by any business establishment.
>
> The information provided by Instant Checkmate in connection with its Services has not been collected in whole or in part for the purpose of furnishing consumer reports, as defined in the FCRA. According to applicable law, you are not permitted to use any of this information as a factor in: (a) establishing an individual's eligibility for personal credit, loans, insurance or assessing risks associated with existing consumer credit obligations; (b) evaluating an individual for employment, promotion, reassignment or retention (including employment of household workers such as babysitters, cleaning personnel, nannies, contractors, and other individuals); (c) evaluating an individual for educational opportunities, scholarships or fellowships; (d) evaluating an individual's eligibility for a license or other benefit granted by a government agency or (e) any other product, service or transaction in connection with which a consumer report may be used under the FCRA or any similar state statute, including, without limitation, apartment rental, check-cashing, or the opening of a deposit or transaction account. You also agree that you shall not use any of the information you receive in connection with Instant Checkmate's Services to take any "adverse action," as that term is defined in the FCRA; you have appropriate knowledge of the FCRA; and, if necessary, you will consult with an attorney to ensure compliance with these Terms.

TruthFinder's Terms of Use contain the same restrictions:[6]

---

[5] These Terms of Use may be found at https://www.instantcheckmate.com/terms-of-use/.

[6] These Terms of Use may be found at https://www.truthfinder.com/terms-of-use/.

17

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

TruthFinder IS NOT A CREDIT REPORTING AGENCY ("CRA") FOR PURPOSES OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 USC §§ 1681 et seq. AS SUCH, THE ADDITIONAL PROTECTIONS AFFORDED TO CONSUMERS, AND OBLIGATIONS PLACED UPON CREDIT REPORTING AGENCIES, ARE NOT CONTEMPLATED BY, NOR CONTAINED WITHIN, THESE TERMS.

You may not use any information obtained from the Company from its Background Information Services in connection with determining a prospective candidate's suitability for:

- Health insurance or any other insurance
- Credit and/or loans
- Employment
- Education, scholarships or fellowships
- Housing or other accommodations
- Benefits, privileges or services provided by any business establishment.

The information provided by the Company via the Website has not been collected in whole or in part for the purpose of furnishing consumer reports, as defined in the FCRA. Accordingly, by purchasing Membership Plans through this Website and using the Company's Background Information Services, you understand and agree that you will not use any of the information you obtain from the Company as a factor in: (a) establishing an individual's eligibility for personal credit, loans, insurance or assessing risks associated with existing consumer credit obligations; (b) evaluating an individual for employment, promotion, reassignment or retention (including employment of household workers such as babysitters, cleaning personnel, nannies, contractors, and other individuals); (c) evaluating an individual for educational opportunities, scholarships or fellowships; (d) evaluating an individual's eligibility for a license or other benefit granted by a government agency or (e) any other product, service or transaction in connection with which a consumer report may be used under the FCRA or any similar state statute, including, without limitation, apartment rental, check-cashing, or the opening of a deposit or transaction account. You also agree that you shall not use any of the information you receive through the Background Information Services to take any "adverse action," as that term is defined in the FCRA; you have appropriate knowledge of the FCRA; and, if necessary, you will consult with an attorney to ensure compliance with these Terms.

The Terms of Use also require that persons use the services only for "personal (non-business) purposes" and forbid using the services for any business purpose. *See* Instant Checkmate Limited License for Services; TruthFinder Terms of Use. To use the websites, persons must agree to the Terms of Use not only once, but

twice—once when they enter their email addresses and once on the checkout page.

Applying these facts, Defendants are not consumer reporting agencies. In *Liberi*, 2012 WL 10919115, at *6, the court found that LexisNexis was not a consumer reporting agency because it required users to agree not to use the reports for FCRA purposes. In *Kidd*, 299 F. Supp. 3d at 404, the court found the same as to Thomson Reuters. In *Sweet*, 2015 WL 1744254, at *6, the court found LinkedIn was not a consumer reporting agency because it did not intend "to make consumer reports." Like those businesses, Instant Checkmate and TruthFinder absolutely do not intend to be used for FCRA purposes and contractually prohibit users from using them for FCRA purposes. Because Plaintiffs' legal conclusions cannot overcome their own factual allegations or ample website evidence, Plaintiffs cannot to state a claim that Defendants are consumer reporting agencies and can be sued under FCRA.[7]

### 3. *The FTC agrees that Defendants do not furnish consumer reports.*

Finally, contrary to Plaintiffs' argument, the existence of a March 2014 settlement between the FTC and Instant Checkmate actually supports that Defendants are not consumer reporting agencies regulated by the FCRA. *See* Am. Compl. ¶¶ 31–35; Ex. A. Plaintiffs' reliance on the March 2014 settlement fails to acknowledge the obvious. Over the past five years since the settlement, the FTC has allowed Instant Checkmate to continue its business, has never once alleged that Instant Checkmate has violated the settlement, and has never once alleged that

---

[7] Plaintiffs may cite to one of several motions to dismiss in the protracted *Robins v. Spokeo, Inc.* litigation for the proposition that assertions that "Defendant regularly accepts money in exchange for reports that 'contain data and evaluations regarding consumers' economic wealth and creditworthiness' are sufficient to support a plausible inference that Defendant's conduct falls within the scope of the FCRA." No. CV10-05306 ODW AGRX, 2011 WL 1793334, at *2 (C.D. Cal. May 11, 2011). But that decision, rendered in 2011, did not address the extensive non-FCRA disclosures and user contract requirements that Instant Checkmate and TruthFinder use. *See id.* Moreover, unlike Instant Checkmate and TruthFinder, Spokeo did not have the benefit of having reached a settlement with the FTC whereby the FTC acknowledged what is needed to prevent being deemed a consumer reporting agency.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Instant Checkmate has been operating as a consumer reporting agency or violated FCRA. Over this time period, Instant Checkmate has consistently implemented the comprehensive disclosures and contractual prohibitions addressed above. The FTC's position over this time period confirms that neither Instant Checkmate nor TruthFinder is a consumer reporting agency.

### B. Plaintiffs' Texas Claims Must Be Dismissed Because the Texas Statute Does Not Apply to Defendants

For two reasons, Plaintiffs cannot state a claim against Defendants under the Texas Statute.

### 1. *The Texas Statute does not apply to information service or interactive computer service websites like Instant Checkmate and TruthFinder.*

The Texas Statute specifically exempts entities like Defendants that are "information service" providers and/or "interactive computer services." Tex. Bus. & Comm. Code § 109.002 ("[t]his chapter does not apply to [*inter alia*] . . . an entity that provides an information service or that is an interactive computer service."). The statute incorporates the broad definitions of "information service" and "interactive computer service" from the Communications Act and Communications Decency Act ("CDA"), respectively. *Id.* § 109.001. The Communications Act defines "information service" as:

> the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing, but does not include any use of any such capability for the management, control, or operation of a telecommunications system or the management of a telecommunications service[.]

47 U.S.C. § 153. The CDA defines "interactive computer service" as:

> any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions[.]

47 U.S.C. § 230(f). Plaintiffs' allegations prove that both definitions apply to

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Defendants.  Describing that Defendants own and operate websites that store information and that are accessed by individual users, Plaintiffs allege:

- "Defendants in this case, employ multiple online 'storefronts,' each branded with a different same but all using the same employees and database."  Am. Compl. ¶ 25.

- "Instant Checkmate is one of America's largest, most heavily trafficked online background reporting services."  Am. Compl. ¶ 26.

- "Evidence of these violations was gathered independently of Plaintiffs and other clients by their third-party expungement service provider who had become concerned that Defendants were simply ignoring the legal notices they received. This third-party simply subscribed to Defendants' website and reviewed its clients' published reports for a fee."  Am. Compl. ¶ 63.

- "Since August 2010, Instant Checkmate has offered an online service allowing consumers to request background reports about any individual."  Am. Compl. Ex. A ¶ 8.

Defendants plainly fit within the "information service" provider and "interactive computer service" statutory definitions.  *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1175–1176 (9th Cir. 2009) ("As written, § 230 does not limit the definition of 'interactive computer service' to services that provide access to the Internet; rather, its singular requirement is for 'access by multiple users to a computer server.'"); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) ("Today, the most common interactive computer services are websites.").  As such, Defendants are exempt from Tex. Bus. & Comm. Code § 109.002.

        2.    *The Texas Statute does not apply to businesses like Instant Checkmate and TruthFinder that do not charge to remove information.*

Plaintiffs cannot state a claim under the Texas Statute for an additional reason.  The Texas Statute applies to "a business entity that publishes criminal record information . . . and requires the payment (i) of a fee in an amount of $150 or more or other consideration of comparable value to remove criminal record information; or (ii) of a fee or other consideration to correct or modify criminal record information."  Tex. Bus. & Comm. Code § 109.002.  Defendants do neither.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

As explained on Defendants' websites, Defendants do not charge any fee or require any consideration to "remove criminal record information." Nor do Defendants charge any "fee or other consideration to correct or modify criminal record information" because Defendants only "remove," never charge a fee for this, and also do not "correct or modify criminal record information." The easy and free removal process is described on the FAQs and a "Remove My Info" page on each of Defendants' websites:[8]

*Screenshots from InstantCheckmate.com*

_____

[8] The respective opt-out pages can be found at www.instantcheckmate.com/opt-out/ and www.truthfinder.com/opt-out/. *N.B.*, as explained by Defendants on their respective opt-out pages, the opt-out will prevent a person's information from appearing in response to a search for that person.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**How Do I Opt Out of TruthFinder?**

To remove your information from TruthFinder, you can opt out online, by phone, or by mail.

The fastest way to remove your information from TruthFinder is to fill out our online form. All you have to do is visit our opt-out page, fill out the form, and click "Opt Out."

To opt out by phone, please call our member care department at (800) 699-8081. Our representatives will locate your record and remove it hassle-free.

If you prefer to opt out by mail, please include your full name, address, date of birth, and email address in a letter. Send an envelope to TruthFinder, 2534 State Street, Suite 473, San Diego, CA 92101. Once we receive your request, we'll remove your information from TruthFinder.

Please keep in mind that opting out of TruthFinder only removes your report from our website. Opting out does not remove your information from official government public records databases.

truthfinder

**How to Remove your Info from TruthFinder (optout)**

Enter your name and state in the form below to locate the record you would like to remove

START HERE - Enter your name and state to locate the record you wish to remove

| FIRST NAME: | LAST NAME: | CITY: | STATE: | |
| e.g. John | e.g. Smith | e.g. Chicago | All States | SEARCH |

*If you would like to unsubscribe from Truthfinder push notifications, please click here.

**About The Opt Out Process**

We understand why someone might want their name removed from the TruthFinder database. That's why we make opting out of TruthFinder easy. Simply search for your report and select the report you'd like to have removed. You will then receive a confirmation email which will require you to confirm the record you wish to remove. That's it!

If you choose to opt out, it's important to understand that this doesn't remove your data from public records. We create our database by collecting information from publicly available information. Anyone will still be able to see these records. They'll just have to use another source.

Resolving hundreds of millions of pieces of data into exactly the correct individuals is difficult and is never an exact science. For this reason, data about you may appear even if you have opted out. For example, your name may continue to appear as a possible relative or associate in other individuals' reports. Additionally, we do not remove sex offender location data. Also, due to the nature of public records information and how it is collected, subtle discrepancies in data may make it difficult to remove everything associated with you. We take every reasonable precaution to ensure it does not happen, but if you see information about you after you have opted out, please contact us so we can clean it up.

You must submit a separate request for each name that you want removed. For example, removing both you and your spouse requires two separate requests from two separate email addresses.

*Screenshots from TruthFinder.com*

Aware that Defendants charge no "fee" to "remove" information, Plaintiffs allege that Defendants nonetheless charge "other consideration to correct or

23

modify criminal record information."  Am. Compl. ¶¶ 55–56.  Specifically, Plaintiffs allege that they or their agent had to subscribe to Defendants' websites and agree to Defendants' Terms of Use "as part of the correction or modification process," that Plaintiffs were thereby forced "to waive any right to pursue a trial by jury or class action," and that "[f]oregoing these valuable rights constitutes a form of consideration in this case."  Am. Compl. ¶¶ 55–56.  Plaintiffs' allegation is not plausible, however, since (i) a person need not subscribe to Defendants' websites, agree to Defendants' Terms of Use, or pay any fee to "remove" information and (ii) Defendants also do not "correct or modify" but instead only "remove" information.  Because Defendants do not charge "a fee in an amount of $150 or more or other consideration of comparable value to remove criminal record information" and do not charge "a fee or other consideration to correct or modify criminal record information" (and Defendants also do not "correct or modify," but only "remove" information), the Texas Statute does not apply and Plaintiffs' claim under the Texas Statute must be dismissed.

## C.  All Claims Against The Control Group Must Be Independently Dismissed

Finally, Plaintiffs have failed to state any claim against The Control Group. The Amended Complaint mentions The Control Group exactly three times.  Am. Compl. ¶¶ 1, 19, 28.  The first instance alleges that The Control Group is "the parent or holding company" of Instant Checkmate, LLC and TruthFinder, LLC. Am. Compl. ¶ 1.  The Amended Complaint later alleges:

> The Control Group is the parent of, holding company for, or otherwise owns and controls the other named Defendants. As such, it provides or controls background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant, thus, regularly conduct business in the State of Texas, and it operates a principal place of business at 600 B Street, San Diego, CA 92101. The Control Group and the other Defendants are "consumer credit reporting agencies," as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

24

furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties.

Am. Compl. ¶ 19.  The Amended Complaint last makes a passing reference to The Control Group as having been successful in its business endeavors.  Am. Compl. ¶ 28.  These allegations are rote, formulaic legal conclusions that do not and cannot state a claim.  Plaintiffs have pled no facts concerning alleged wrongdoing by The Control Group or suggesting that Plaintiffs are entitled to relief from The Control Group.  For this independent reason, The Control Group should be dismissed.

### D.    The Complaint Should Be Dismissed With Prejudice

Federal Rule of Civil Procedure 15 permits a district court to issue a dismissal with prejudice where any amendment would be futile.  "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir.), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra*, 137 S. Ct. 2188 (2017).  Here, no set of additional facts can contradict the conclusion that Instant Checkmate and TruthFinder contractually prohibit persons from using them for any FCRA purpose and absolutely do not expect that persons will use them for any FCRA purpose.  And no additional pleading will change the conclusion that Instant Checkmate and TruthFinder are each an "interactive computer service," *i.e.*, a website, exempt from the Texas Statute.  Because Plaintiffs' Amended Complaint cannot be remedied by additional facts, it should be dismissed with prejudice.

## CONCLUSION

For the reasons outlined above, Defendants respectfully request that the Amended Complaint be dismissed with prejudice.

Dated:  April 30, 2019                               VENABLE LLP

By:    */s/ Daniel S. Silverman*
       *Attorneys for Defendants*
       *The Control Group Media*
       *Company, LLC; Instant Checkmate,*
       *LLC; and TruthFinder, LLC*

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 30th day of April, 2019, I filed the foregoing Motion to Dismiss the Complaint though the Court's CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

/s/  *Daniel S. Silverman*
Daniel S. Silverman

26

46337844